UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| CHRIS MCGORMAN,<br><br>    Petitioner,<br><br>v.<br><br>DANIEL AKERS, WARDEN,<br>Lee Adjustment Center,<br><br>    Respondent. | CASE NO. 5:21-CV-214-KKC-MAS<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

The matter is before the Court on Petitioner Chris McGorman's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) Magistrate Judge Matthew A. Stinnett has filed a report recommending that the Court grant McGorman's petition as to Count II, an ineffective assistance of counsel claim regarding a 20-year plea offer. (DE 39.) Judge Stinnett recommends that the Court deny the remaining claims as untimely under the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Respondent Daniel Akers has filed objections to the magistrate judge's recommendation. (DE 41.) McGorman has filed a response to those objections. (DE 43.) Fully briefed, the Court will analyze each of Akers' objections to the recommendation in turn.

**I.    Background**

On January 29, 2000, fourteen-year-old McGorman shot and killed his classmate, Larry Raney, in a barn behind McGorman's home. He asked another student, Daniel Cameron, to help dispose of Raney's body. Instead of helping, Cameron reported McGorman's actions to his mother, who reported the murder to law enforcement. When police officers investigated the McGorman residence, they found Raney's body in a cornfield. They also recovered the murder weapon, a .22 caliber pistol, from McGorman's bedroom closet. The

victim's blood was found on McGorman's pants. McGorman was charged with murder, first-degree burglary, and defacing a firearm. At trial, he confessed to the crimes but attempted to shift some of the blame to Cameron. McGorman was found guilty on all counts and sentenced to life in prison for the murder conviction.

The post-conviction proceedings in this matter are extensive. McGorman appealed the Madison Circuit Court's final judgment on September 6, 2001, which was affirmed by the Supreme Court of Kentucky on May 22, 2003. The Supreme Court of Kentucky denied his motion for a rehearing on September 18, 2003.

On December 7, 2004, McGorman filed a motion to vacate his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. The circuit court denied most claims alleged in his motion but held an evidentiary hearing on the remaining claims. During this evidentiary hearing, McGorman's first trial attorney, Alex Rowady, testified about a plea deal offered by the prosecutor for twenty-years imprisonment in exchange for a "guilty but mentally ill" plea. During his testimony, Rowady confirmed that he conveyed the offer to McGorman's parents and that they rejected it. However, he could not remember conveying the offer to McGorman himself.

McGorman moved to amend his motion to vacate, alleging ineffective assistance of counsel regarding Rowady's failure to convey the plea offer directly to McGorman. He maintained that Rowady never communicated to him any plea offer. The circuit court denied McGorman's motion to vacate on all grounds, including his new allegation.

McGorman appealed the circuit court's decision to the Kentucky Court of Appeals ("Court of Appeals"), which concluded that the circuit court should have held another evidentiary hearing to determine who Rowady communicated the plea offer to. The Court of Appeals reversed and remanded the case for a new trial based on the finding that McGorman received ineffective assistance of counsel because he was allowed to be interviewed by police

2

officers prior to being evaluated by a mental health professional, among other reasons. The Commonwealth appealed the decision to the Supreme Court of Kentucky, who reversed the Court of Appeals' decision but found that an evidentiary hearing was needed on McGorman's plea offer claim.

At the evidentiary hearing ordered by the Supreme Court of Kentucky, Rowady once again confirmed that he only recalled conveying the plea offer to McGorman's parents. McGorman himself testified that no plea offer was conveyed to him, either by Rowady or his parents, and that he would have accepted the plea offer if he had known about it.

Upon the Government's request, another evidentiary hearing took place on September 18, 2017. Rowady produced his own handwritten note indicating that the prosecutor wanted McGorman to plead guilty but mentally ill for a term of imprisonment of 20 years. His note further indicated that the offer was received on March 8, 2001, after both parties had received their respective expert reports on McGorman's competency and criminal responsibility. The offer was given just five days before the circuit judge found McGorman competent to stand trial.

On March 18, 2018, the Madison Circuit Court denied McGorman's motion to vacate his sentence pursuant to his plea offer claim. The circuit court found that McGorman failed to satisfy the *Strickland* standard for establishing ineffective assistance of counsel when he failed to show a reasonable probability that he would have accepted the plea offer and a different result would have occurred had it been conveyed to him because it found that McGorman relied upon his parents' direction and advice during the criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668 (1984).

McGorman again appealed the circuit court's decision. The Court of Appeals affirmed the decision but focused on the record suggesting that McGorman's parents were in control of McGorman's representation and defense. The Court of Appeals found that when his

3

parents forcefully rejected the plea offer, McGorman functionally had no interest in taking a plea offer. The Supreme Court of Kentucky denied McGorman's subsequent motion for discretionary review on August 13, 2020.

On August 13, 2021, McGorman filed the petition currently pending before this Court. He claims he was denied the following:

(1) effective assistance of counsel under the 6th and 14th Amendments of the United States Constitution when, without any attempt at pretrial negotiation with the prosecutor and without adequate independent investigation, counsel advised McGorman to confess to the police ("Claim I");

(2) effective assistance of counsel under the 6th and 14th Amendments when his counsel failed to convey the Commonwealth's plea offer and failed to advise him of the risks and benefits of the offer compared to the risks and potential benefit of a jury trial ("Claim II");

(3) due process under the 14th Amendment when the trial court failed *sua sponte* to order a competency evaluation/hearing and McGorman received ineffective assistance of counsel at trial in violation of his 6th and 14th Amendment rights when his counsel failed to request a competency evaluation/hearing during trial despite counsel's serious concern that due to a deterioration in his mental health, McGorman was not competent to stand trial ("Claim III"); and

(4) effective assistance of counsel at trial and on appeal ("Claim IV").

(DE 1 at 8, 20, 33, 45.)

In his Report and Recommendation, entered in the record on November 26, 2024, United States Magistrate Judge Stinnett recommends the Court grant McGorman's petition based on Claim II alone. Judge Stinnett found separately that Claims I, III, and IV are untimely. Akers objects only to the magistrate judge's analysis of Claim II, arguing that the

4

magistrate judge (1) did not give full weight to the findings of fact of the trial court; (2) did not give proper double deference to the application of the *Stickland* and *Lafler* standards by the Court of Appeals; and (3) improperly extended United States Supreme Court precedent from other situations to cover the circumstances of the case. (DE 41 at 2.) Having reviewed the magistrate judge's recommendation and agreeing with the analysis of Claims I, III, and IV, the Court will limit its discussion solely to Akers' objections to the magistrate judge's Claim II analysis.

**II.     Analysis**

A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal law, however, restricts a federal court's discretion to grant habeas relief to a state prisoner who claims that his custody pursuant to a state criminal judgment violates federal law. *See Brown v. Davenport*, 596 U.S. 118, 125 (2022) ("Under AEDPA . . . a federal court may disturb a final state-court conviction in only narrow circumstances."). A federal court may grant habeas relief in these circumstances only when the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings. 28 U.S.C. § 2254(d). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). A federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded [sic] jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

5

The magistrate judge recommends the Court find that the Court of Appeals unreasonably applied the second prong of the *Strickland* standard. This prong requires the party asserting ineffective assistance of counsel to show prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Pursuant to *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012), a defendant demonstrates prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that: (1) the defendant would have accepted the plea offer; (2) the prosecution would not have withdrawn the plea offer in light of intervening circumstances; (3) the court would have accepted the plea offer's terms; and (4) the conviction or sentence, or both, under the plea offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Here, the magistrate judge recommends the Court grant habeas relief because Claim II satisfies all the *Lafler* elements.

### A.     Weight of the Trial Court's Findings

Akers argues that the magistrate judge did not give "full weight" to the factual findings of the trial court. (DE 41 at 3.) In finding that there was not a reasonable probability that McGorman would have accepted the plea offer if it had been conveyed to him, the trial court concluded that McGorman would not have accepted the plea against his parents' advice. (*Id.* at 3-4.) Akers claims that the magistrate judge "reweigh[ed] the evidence anyway" and did not give the trial court's factual findings the proper deference to which they are entitled. (*Id.* at 5.)

The magistrate judge did not reweigh the factual findings of the trial court or fail to give them their full weight; he properly addressed the legal questions currently before the Court. Whether the Court of Appeals unreasonably applied clearly established federal law is a *legal* question, not factual. "[T]he presumption of correctness accorded to state court findings only applies to basic, primary facts, and not to mixed questions of law and fact, and it applies to implicit findings of fact, logically deduced because of the trial court's ability to

6

adjudge the witnesses' demeanor and credibility." *Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000) (quoting *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000) (quotation marks omitted).

Here, before analyzing the relevant ineffective assistance of counsel claim, the magistrate judge explicitly stated that he was "[a]ffording proper deference to the state courts' factual findings[.]" (DE 39 at 35.) He repeated that sentiment when he began his prejudice analysis. (*Id.* at 38 ("The Court owes deference to the factual findings of the state court under AEDPA.").) Moreover, the magistrate judge did not reweigh or revise the trial court's factual findings. He simply applied the law to the following facts:

(1) McGorman was found competent to stand trial and consider a guilty plea;

(2) McGorman was cooperative with law enforcement and confessed to Raney's killing during an interview;

(3) McGorman insists that he consistently followed his attorneys' guidance during the criminal proceedings; and

(4) McGorman testified under oath during post-conviction proceedings that he would have taken the twenty-year plea offer.

(*Id.* at 39-41.) In considering these facts, the magistrate judge reasonably concluded that there was a reasonable probability that McGorman would have accepted the prosecutor's twenty-year plea deal.

The Court is not persuaded by Akers' argument that the magistrate judge declined to give the trial court's factual findings deference. Accordingly, the Court will overrule this objection and turn to the next.

### B. Deference to the Court of Appeals

Akers argues that the magistrate judge did not give proper deference to the Court of Appeals and its application of the *Strickland* and *Lafler* analyses. Akers is correct that the underlying question of this objection is whether the state court unreasonably applied clearly

7

established federal law. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000). Here, the magistrate judge expressly explains why the Court of Appeals' application of clearly established federal law was unreasonable.

Under the AEDPA, a federal court must decide whether there is Supreme Court precedent that would compel every fair-minded jurist to find that the Court of Appeals' application of clearly established federal law was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1106 (6th Cir. 2022). The magistrate judge correctly pointed to two parameters set by the Supreme Court to find that the Court of Appeals' application of *Strickland* and *Lafler* was unreasonable. First, a defendant, irrespective of age or mental health, decides whether to plead guilty. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Second, a defendant deemed competent to stand trial possesses the capacity to make the fundamental choice presented by a plea offer. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

Here, the magistrate judge concludes that the Court of Appeals' application of the *Strickland* and *Lafler* tests ignored these two fundamental principles—despite acknowledging that McGorman was competent to comprehend the cost and benefits of the plea process. *See McGorman v. Commonwealth*, 2019 Ky. App. Unpub. LEXIS 705, 2019 WL 4892454, at *4 (Ky. Ct. App. Oct. 4, 2019) ("[W]e must give Mr. McGorman the benefit of the doubt concerning his competence to comprehend the cost/benefit of accepting or rejecting an offer on a guilty plea because . . . he was specifically adjudicated competent to stand trial and participate in his own defense."). McGorman's parents' rejection of the plea offer, and McGorman's reliance on his parents in the course of the proceedings, does not overcome long-standing precedent that a competent defendant is the ultimate arbiter of whether to accept

or reject a plea offer. Because the Court of Appeals did not factor this precedent into its analysis, the magistrate judge concludes that no fair-minded jurist would find that its application of the *Strickland* and *Lafler* tests was reasonable. Accordingly, he found that the Court of Appeals was owed no deference in this analysis. The Court agrees, and will therefore overrule this objection.

### C.  Extension of United States Supreme Court Precedent

Akers argues that the magistrate judge erroneously conflated Supreme Court precedent in determining that the Court of Appeals misapplied federal law. Akers' objection is misplaced. Akers relies upon *Chinn*, 24 F.4th at 1105-06, which involved the withholding of exculpatory evidence and is thus distinguishable from the instant matter.

The Supreme Court has consistently held that the defendant is the ultimate authority on whether to plead guilty. *See Jones*, 463 U.S. at 751 ("A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *Nixon*, 543 U.S. at 187 ("Certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they *cannot be made for the defendant by a surrogate* . . . . Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action."). McGorman, through Rowady's deficient performance, was deprived of this right. McGorman's reliance on the advice of his parents throughout the proceedings and his parents outright rejection of the plea offer is irrelevant to the underlying question because McGorman was the ultimate authority on whether to plead guilty. For the reasons stated *supra* and in the magistrate judge's recommendation, there is a reasonable possibility that McGorman would have taken the twenty-year plea offer.

Further, the Supreme Court has held that the determination of a defendant's competency also determines whether the defendant has the capacity to take a plea offer and

plead guilty. *Godinez v. Moran*, 509 U.S. 389, 398 (1993) ("[W]e can conceive of no basis for demanding a higher level of competence for those defendants who choose to plead guilty."). Here, McGorman was found competent. While the Court of Appeals conceded that competency meant that McGorman could understand the cost and benefits of taking a plea offer, it ultimately placed more emphasis on the parents' thoughts on the plea offer than the competent defendant himself. The Court is unpersuaded by Akers' argument that the magistrate judge inappropriately applied *Lafler* to "the right to decide to plead guilty and whose decision it is to accept a plea offer." (DE 41 at 8.) It is unclear how these general principles of competency and authority to plead guilty *would not* directly apply to the underlying case. Accordingly, the Court will overrule this objection.

### III. Conclusion

Having reviewed the magistrate judge's recommendation and agreeing with its analysis, the Court hereby **ORDERS** as follows.

(1) The magistrate judge's report and recommendation (DE 39) is **ADOPTED** as the Court's opinion.

(2) Akers' objections to the magistrate judge's report and recommendation (DE 41) are **OVERRULED**.

(3) McGorman's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (DE 1) is **GRANTED** as to Claim II and **DENIED** as to all other claims set forth in his petition.

(4) The Commonwealth of Kentucky (acting through the Kentucky Attorney General's Office or the Kentucky Commonwealth Attorney's Office) is directed to offer McGorman a plea deal that allows him to plead guilty but mentally ill to the charge of murder with a term of 20 years' imprisonment.

(5) If McGorman accepts the offer, the Commonwealth of Kentucky should promptly petition the Madison Circuit Court to: reopen McGorman's state criminal case, vacate McGorman's 2001 murder conviction, accept the parties' plea agreement, find McGorman "guilty but mentally ill" to the charge of murder, and impose a sentence consistent with the parties' agreement.

(6) A judgment consistent with this order and the magistrate judge's report and recommendation will be **ENTERED**.

This 13th day of February, 2026.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**